IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 18-cv-00702-MSK-MEH

JAIMIE KULIKOWSKI,

    Plaintiff,

v.

PAYSCALE,

    Defendant.

---

**OPINION AND ORDER GRANTING IN PART MOTION TO DISMISS**

---

**THIS MATTER** comes before the Court pursuant to the Defendant's ("Payscale") Motion to Dismiss **(# 8)**, Ms. Kulikowski's response **(# 9)**, and Payscale's reply **(# 12)**. Also pending are additional motions by Ms. Kulikowski that essentially seek leave to amend her complaint **(# 10, 14, 21)**, and a motion by Payscale **(# 11)** seeking to strike on of Ms. Kulikowski's motions to amend.

## FACTS

Ms. Kulikowski's *pro se*[1] Complaint **(# 1)** is lengthy, discursive, and difficult to parse. It consists largely of attachments, and from those attachments, the Court discerns the following facts.

From 2007 until March 24, 2018, Ms. Kulikowski was employed by Payscale. Her most recent job title was Client Manager, and her job duties involved managing clients, processing

---

[1]    The Court is mindful of Ms. Kulikowski's *pro se* status and accordingly construes her pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

1

client renewals, training new users, and various other tasks. Ms. Kulikowski is of Polish ancestry and, most pertinently, suffers from Post Traumatic Stress Disorder ("PTSD").

As best the Court can determine, Ms. Kulikowski's issues with Payscale derive from four events. First, on September 12, 2017, Ms. Kulikowski was participating in a leadership training workshop at Payscale, when the trainer used the phrase "Every parent has a favorite child." Ms. Kulikowski states that "this microaggression . . . sent me spiraling into a PTSD nightmare because I was [not] the favorite child in my family." Beyond apparently identifying this incident as an event that triggered her PTSD, she does not elaborate further on this incident.

Second, on September 24, 2017, Ms. Kulikowski requested, apparently pursuant to the Americans With Disabilities Act, that Payscale provide her with an accommodation for her PTSD in advance of an upcoming conference. Specifically, Ms. Kulikowski requested that Payscale provide her with "a private room where I could go and release emotions in the event I experienced a panic/trauma episode." Payscale asked Ms. Kulikowski to complete some medical paperwork in furtherance of her request, and then scheduled a meeting with Ms. Kulikowski, Human Resources representative Crystal Rose, and Payscale CEO Mike Metzger, to discuss her request and other issues. Ms. Kulikowski stated that she "feel[s] incredibly unsafe with both"[2] Ms. Rose and Mr. Metzger, and asked to have certain Payscale officials accompany her to the meeting. Payscale refused to authorize the requested individuals and offered Ms. Kulikowski the option to be assisted by certain other individuals. Ms. Kulikowski refused that offer and Payscale ultimately cancelled the meeting. Ms. Kulikowski appears to allege that her request for the private room during the conference was also denied. It is not clear whether the conference

---

[2] Ms. Kulikowski appears to fear Mr. Metzger because of his "German surname" and Ms. Rose because she "look[s] like the Aryan race." Ms. Kulikowski experiences "deep unconscious ancestral bias" from them, resulting from the historical mistreatment of her Polish ancestors.

took place, whether Ms. Kulikowski participated as intended, or whether the absence of a private room affected her participation at the conference.

Third, at some point in October 2017, a Payscale employee posted an anonymous online comment about the company, accusing it of racism. Ms. Rose and Mr. Metzger sent out an e-mail to all employees, acknowledging awareness of the online comment, emphasizing Payscale's complaint process and anti-discrimination initiatives, and inviting employees to bring complaints to management. Ms. Kulikowski "was appalled at this e-mail" because she "had been submitting complaints about discrimination and inequity for almost a month" but had not been taken seriously. It is not clear whether the "complaints" she refers to are those regarding her PTSD accommodation, or some other complaints; beyond the statement quoted above, Ms. Kulikowski provides no other detail about this incident.

The Court pauses the chronology here for a moment. On October 25, 2017, Ms. Kulikowski filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). She alleged that she had been discriminated against because of her sex, disability, and national origin (her Polish ancestry), and recited the second and third events set forth above. Ms. Kulikowski seems to suggest in her Complaint that she subsequently withdrew the EEOC charge, she also attaches an EEOC Notice of Right to Sue, dated December 27, 2017, in which the EEOC advises her that it was unable to conclude that Payscale had violated Title VII or the ADA, and that Ms. Kulikowski was free to commence her own suit within 90 days.

The fourth and final incident has a somewhat involved backstory. In late October, Payscale approved Ms. Kulikowski to take several months' leave under the Family and Medical Leave Act ("FMLA"). On November 2, 2017, Payscale sent her an e-mail informing her that she was eligible for a $1,000 bonus award for having completed 10 years of service with the

3

company. (Ms. Kulikowski notes that her actual anniversary was in July, and that "getting an e-mail about an anniversary gift almost half a year [late] feels like covert harassment.") Because she was on leave, Ms. Kulikowski did not promptly receive this e-mail. In March 2016, after she had returned from leave, Payscale contacted her again about the award, referencing the e-mail of November 2, 2017. Ms. Kulikowski states that "[s]eeing the date of Nov. 2d" triggered her recollection of a difficult period during her FMLA leave when she lost the support of her trusted therapist. She states that her "nervous system started to get revved" at the memory. She responded to Payscale that she did not want the $1,000 award, and instead wanted "an open and transparent conversation with senior leadership and the leadership trainer around what happened during the fall of 2017." She stated that, if such a conversation was not possible, Payscale should donate the $1,000 to a charity of its choice. When Payscale asked her to designate a charity, she concluded that "they were not willing to repair the conflict with me peacefully" and asked that Payscale donate the money to the United States Holocaust Museum, in honor of a relative of hers who was executed in Auschwitz. She states that she "received another reprimanding email from HR a couple of days later," although she does not elaborate on that e-mails' content."

It was that e-mail that, Ms. Kulikowski alleges, caused her to experience a "PTSD rage episode." Although the Complaint does not describe this episode in any meaningful detail, it appears that on March 23, 2018, Ms. Kulikowski went to the Payscale office with the intent of discussing the "triggering" e-mail with Payscale officials. While there, she acknowledges that she was in the "fight" phase of a "fight-flight-freeze" response. The Court can infer that Ms. Kulikowski made threatening statements to or about her co-workers, and that the co-workers reported those threats to Payscale management. Payscale e-mailed Ms. Kulikowski that "due to

4

the behaviors reported this afternoon," she was being placed on administrative leave pending an investigation. The following day, Payscale informed Ms. Kulikowski that her employment was being terminated. In a post-termination e-mail to Payscale, Ms. Kulikowski asserts that "knowing that some of your employees have PTSD should have prompted leadership to get formal training on the disorder."

Two days later, Ms. Kulikowski commenced this action. Reading her Complaint liberally, the Court understands her to allege claims under both Title VII of the Civil Rights Act (sounding in national origin discrimination due to her Polish heritage and possibly also sex discrimination) and under the ADA (in that her PTSD constitutes a protected disability). The Court understands her to primarily challenge her termination from employment on March 24, 2018, but it is clear that she also contends that she was denied a reasonable accommodation for her PTSD under the ADA, both in the specific sense that it denied her request for a private room in October 2017, and in the more general sense that it failed to get appropriate training for dealing with employees with PTSD, leading to her termination in March 2018.

Payscale has moved **(# 8)** to dismiss Ms. Kulikowski's Complaint on two grounds: (i) that Ms. Kulikowski failed to exhaust her administrative remedies by filing a Charge of Discrimination with the EEOC regarding her termination before filing suit; and (ii) that Ms. Kulikowski failed to properly serve Payscale pursuant to Fed. R. Civ. P. 4.

## **ANALYSIS**

**A. Exhaustion**

Both Title VII and the ADA contain similar requirements that, before an employee may bring a discrimination lawsuit against their employer, the employee must first exhaust their administrative remedies by filing a charge of discrimination with the EEOC. *Jones v. Needham*,

856 F.3d 1284, 1289 (10th Cir. 2017) (Title VII); *Wickware v. Manville*, 676 Fed.Appx. 753, 767 (10th Cir. 2017). At a minimum, the employee's charge must identify the facts relating to the employment action and identify the basis of discrimination that the employee asserts. *Id.* Each discrete act of discrimination must be presented – or at least separately itemized – in a charge. *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003). Exhaustion is complete when the EEOC has issued a Notice of Right to Sue. 29 C.F.R. § 1601.28. An employee's failure to file a charge with regard to a given event or theory of discrimination requires that any unexhausted claim or theory asserted by the employee in subsequent litigation be dismissed. The burden of proving exhaustion is on the employee. *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1106 (10th Cir. 2002).

Here, the record reflects that Ms. Kulikowski filed a single charge of discrimination with the EEOC on October 25, 2017. That charge addressed two events – the rejection of her request for a private room at the conference as an accommodation of her PTSD and Payscale's encouragement of others' filing discrimination complaints while ignoring the discrimination complaints Ms. Kulikowski had filed. By definition, that charge could not have complained about Ms. Kulikowski's termination because that termination had yet to occur. Ms. Kulikowski has not alleged that she filed a separate charge with the EEOC concerning her termination, and indeed, she could not have done so: she commenced this suit on March 26, 2018, the first business day following her termination, leaving no time for her to file a charge or for the EEOC to process it. Accordingly, the Court agrees that any claims by Ms. Kulikowski relating to her termination must be dismissed as unexhausted.

However, in due deference to Ms. Kulikowski, it is clear that she exhausted those claims that are contained in her October 2017 EEOC charge – namely, charges of sex, nation origin, and

disability discrimination relating to the private room accommodation and Payscale encouraging the filing of discrimination complaints. The EEOC completed the processing of that charge and issued a Notice of Right to Sue to Ms. Kulikowski before she commenced this suit. Payscale has not argued – and thus, this Court does not reach – the question of whether Ms. Kulikowski's Complaint adequately states a claim under Title VII or the ADA with regard to these events. It is sufficient to find that, given a liberal construction of her *pro se* Complaint, Ms. Kulikowski may be asserting sufficiently-exhausted Title VII and ADA claims.

**B. Service**

Fed. R. Civ. P. 4(h) dictates how service of process is made upon a business entity like Payscale. That rule provides two methods by which service can be made. The first is by delivering the Summons and Complaint to "an officer, a managing or general agent, or any other agent authorized by appointment or law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Alternatively, service can be made in accordance with Rule 4(e)(1), in the manner prescribed for "serving an individual." Fed. R. Civ. P. 4(h)(1)(A). Rule 4(e)(1) allows service to be made "following state law" for either the state where the forum court is located (here, Coloroado) or the state where service is made (here, Washington). Ms. Kulikowski bears the burden of proving that service of process is sufficient. *Federal Deposit Ins. Co. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992)

The Docket contains an affidavit of service **(# 4)**, executed by Ms. Kulikowski, stating that she served Payscale by placing the Summons and Complaint in a Federal Express envelope and dispatching it to an unspecified address. Were this the only evidence in the record of service, the Court would be inclined to find it facially insufficient. However, Payscale's own reply brief acknowledges that it received the Federal Express envelope at its home office in

Seattle, Washington, and that the delivery was received by "the Payscale receptionist." Thus, the Court assesses the sufficiency of Ms. Kulikowski's service upon the facts admitted by Payscale.

The Court first finds that such service does not comply with Fed. R. Civ. P. 4(h)(1)(B). To be effective under that rule, the person receiving service must be "an officer" of Payscale, a "managing or general agent," or a person "authorized by appointment or law to receive process." Ms. Kulikowski has not contended that the receptionist who received the Federal Express envelope satisfied any of those categories. Thus, service was not proper under federal Rule 4(h)(1)(B).

The Court then turns to state law, pursuant to Fed. R. Civ. P. 4(h)(1)(A) and 4(e)(1). Under Washington Law, where Payscale was purportedly served, R.C.W. 4.28.080(9) provides a seemingly redundant list of persons who may be served to complete service upon a corporation: "the president or other head of the company or corporation, the registered agent, secretary, cashier or managing agent thereof or to the secretary, stenographer or office assistant of the president or other head of the company or corporation, registered agent, secretary, cashier or managing agent." To sufficiently parse this language, the Court must break it into two parts. The first part permits service upon "the president or other head of the company or corporation, the registered agent, secretary, cashier or managing agent thereof." The offices of "president," "managing agent," and "registered agent" of a corporation suggest that the target of service must be an important official in the hierarchy of the company. This, in turn, suggests that the terms "secretary" and "cashier" are intended to refer to similarly high-ranking officers, equivalent perhaps to corporate secretaries and treasurers, not low-level secretaries (*i.e.* front-line receptionists). The second part of the statute allows service on "the secretary, stenographer or office assistant of the president . . ., registered agent, secretary, cashier, or managing agent."

Here, the identification of "secretary, stenographer, or office assistants" is more akin to ordinary administrative staff. This second portion of the statute provides that service can be made upon high-ranking officers by serving their personal secretaries or assistants. Thus, although a receptionist may be a proper target for service, that receptionist must be one specifically-assigned to an appropriate corporate official, not simply any receptionist found within the office.

This interpretation is bolstered by *Greenfield v. Brenner*, 2006 WL 776772 (E.D. Wa. Mar. 23, 2006). There, the plaintiff attempted service on a law firm by serving the firm's receptionist. The court found that such service was not "in compliance" with Washington law. To the extent that service upon a seemingly-ordinary receptionist was insufficient in *Greenfield*, so must it be here upon the seemingly-ordinary receptionist at Payscale that received Ms. Kulikowski's Federal Express envelope. Thus, the Court finds that Ms. Kulikowski has failed to show that she effectuated proper service under Washington law.

That leaves Colorado law. Under C.R.C.P. 4, service upon a business entity is accomplished by delivering process to an array of officials, including the business' designated registered agent, an officer, a manager, or to the "secretary or assistant" of such persons. C.R.C.P. 4(e)(4). Once again, this rule permits service upon the <u>personal</u> receptionist of an appropriate high-ranking corporate official, but does not permit service upon a business' <u>general</u> receptionist or secretary. Because Ms. Kulikowski has not come forward with information suggesting that the receptionist who received the Federal Express shipment is the personal receptionist for an appropriate corporate official, the Court cannot find that Ms. Kulikowski has shown that she effected sufficient service on Payscale under C.R.C.P. 4.

Accordingly, the Court finds that Ms. Kulikowski has failed to properly serve Payscale, requiring dismissal pursuant to Fed. R. Civ. P. 12(b)(5). However, that defect can be remedied.

9

Accordingly, the Court will stay the dismissal of this action for a period of 30 days, during which Ms. Kulikowski must effectuate proper service on Payscale under either Fed. R. Civ. P. 4, C.R.C.P. 4, or R.C.W. 4.28.080, and to file an affidavit of service reflecting such. If Ms. Kulikowski properly serves Payscale, this action may proceed with regard to her claims of discrimination and failure to accommodate as set forth in her October 25, 2017 EEOC charge; if Ms. Kulikowski does not adequately serve Payscale within this period, this action shall be dismissed.

### C. Remaining motions

The Court summarily denies Ms. Kulikowski's motions to amend **(# 10, 14, 21)**. Those motions address issues that are not cognizable under the Title VII or ADA claims that Ms. Kulikowski could pursue in this action, and are otherwise frivolous. The Court denies Payscale's motion to strike **(# 11)** as moot.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Payscale's Motion to Dismiss **(# 8)**. The Court dismisses all of Ms. Kulikowski's claims that may relate to her termination, but denies Payscale's motion with regard to those claims of discrimination or failure to accommodate that are set forth in her October 2017 EEOC charge. The Court further grants Payscale's motion based on Ms. Kulikowski's failure to properly serve Payscale with the Summons and Complaint, requiring dismissal of the Complaint. However, the Court will stay the effect of that dismissal for 30 days, during which Ms. Kulikowski may attempt to properly serve Payscale and file an affidavit demonstrating such service. Ms.

Kulikowski's motions to amend **(# 10, 14, 21)** are **DENIED** and Payscale's motion to strike **(# 11)** is **DENIED AS MOOT**.

Dated this 29th day of June, 2018.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge